710 So.2d 776 (1998)
CADDO-SHREVEPORT SALES AND USE TAX COMMISSION
v.
OFFICE OF MOTOR VEHICLES Through the DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS OF THE STATE of Louisiana.
No. 97-CA-2233.
Supreme Court of Louisiana.
April 14, 1998.
*777 Richard P. Ieyoub, Atty. Gen., Michael C. Barron, Stephen A. Quidd, Thomas S. Halligan, Baton Rouge, for Applicant.
Richard G. Barham, Barham & Warner, Shreveport, for Respondent.
MARCUS, Justice.[*]
This case comes before us on direct appeal pursuant to La. Const. art. V, § 5 for our review of a ruling of the trial court declaring La. R.S. 47:303(B)(3)(a) and (b)(i) unconstitutional and unenforceable to the extent that the Commissioner of the Louisiana State Office of Motor Vehicles is mandated to collect local sales and use taxes levied by political subdivisions of the State of Louisiana on motor vehicles absent a voluntary contract between the political subdivisions and the state Vehicle Commissioner.
The Caddo-Shreveport Sales and Use Tax Commission (hereinafter the "Commission"), the central collector of taxes for the parish, filed suit for a declaratory judgment asserting that it was being unconstitutionally prohibited from collecting locally levied sales and use taxes on motor vehicles by the operation of La. R.S. 47:303. That statute dictates that local tax collectors must enter into an agreement to use the Vehicle Commissioner of the Office of Motor Vehicles (hereinafter "OMV") as agent to collect local motor vehicle sales and use taxes. The Commission argued that La. Const. arts. VI, § 29(A) and VII, § 3(A) & (B) confer upon local governments the power to levy and collect all local sales and use taxes. No exceptions are made in the constitution with respect to local taxes on motor vehicles. In short, the Commission argued that the legislature has no right to require that OMV collect local taxes against the Commission's wishes or to designate a collection agent for the Commission. OMV responded that it was acting only as an agent of the Commission and that the constitution does not expressly forbid the legislature from designating agents for local tax collectors.
The Commission and OMV filed cross motions for summary judgment, agreeing that there were no material issues of fact in dispute and that only an issue of law, the constitutionality of the statute, was presented for resolution. The trial judge granted the motion for summary judgment filed by the *778 Commission and denied the cross motion filed by OMV. OMV filed a suspensive appeal to this court. The sole issue presented for our review is the constitutionality of La. R.S. 47:303(B)(3)(a) and (b)(i).[1]
La. R.S. 47:303(B)(3)(a) and (b) provide:
(3)(a) It is not the intention of this Subsection to grant an exemption from the sales and use tax levied in this Title to any sale, use, items, or transaction which has heretofore been taxable, and this Subsection is not to be construed as so doing. It is the intent of this Subsection to transfer the collection of state and political subdivision sales and use taxes on vehicles from the vendor to the vehicle commissioner as agent for the secretary of the Department of Revenue and Taxation and for the collectors of such political subdivision taxes and to provide a method of collection of the tax directly from the vendee or user by the vehicle commissioner as agent of the secretary and such collectors.
(b)(i) The vehicle commissioner and the governing body of any political subdivision as defined in Article VI, Section 44(2) of the Constitution of Louisiana, in which a sales or use tax has been imposed by such political subdivision on the sale or use of motor vehicles, shall enter into an agreement by which the vehicle commissioner shall collect such tax on behalf of the political subdivision. Except as provided in Paragraph (5) of this Subsection, no certificate of title or vehicle registration license shall be issued until such local tax is paid.
(ii) The tax imposed by the political subdivisions on the sale or use of vehicles subject to the Vehicle Registration License Tax Law (R.S. 47:451 et seq.) shall be collected by the vehicle commissioner and distributed to the political subdivisions as provided for in R.S. 47:301(10)(f) and (18)(b). The vehicle commissioner shall withhold from any such taxes collected for the political subdivisions one percent of the proceeds of the tax so collected, which shall be used by the commissioner to pay the cost of collecting and remitting the tax to the political subdivisions.
(iii) The vehicle commissioner shall cause to be conducted annually, by the legislative auditor, an audit or examination of the books and accounts of sales and use taxes collected by the vehicle commissioner for each political subdivision. The scope of the audit shall be sufficient to determine whether or not sales and use taxes collected for each political subdivision have been properly and correctly distributed in accordance with law during the period under audit. The cost of such audit shall be prorated to all local political subdivisions for whom the vehicle commissioner collects sales and use taxes on the basis of total tax dollars distributed to each local political subdivision, and the vehicle commissioner shall withhold the cost of such audit from taxes collected. In the event the audit determines that adjustments to tax distributions are required, the vehicle commissioner shall adjust future tax distributions to applicable tax recipient bodies. The prescriptive period for adjustments under this Section shall be three years from the thirty-first day of December of the year in which such taxes became due.
(iv) All such agreements now existing between any political subdivisions and the *779 secretary are hereby declared valid and the functions of the secretary thereunder are hereby transferred to the director of public safety as vehicle commissioner (emphasis added).
The Commission asserts that the statute violates the constitution because the constitution grants the power to levy and collect local taxes to local governments and provides that there shall be a single tax collector of such taxes within each parish. The Commission relies on the following provisions of the Louisiana Constitution:

Art. VI, § 29. Local Governmental Subdivisions and School Boards; Sales Tax
Section 29. (A) Sales Tax Authorized. Except as otherwise authorized in a home rule charter as provided for in Section 4 of this Article, the governing authority of any local governmental subdivision or school board may levy and collect a tax upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption, of tangible personal property and on sales of services as defined by law, if approved by a majority of the electors voting thereon in an election held for that purpose. The rate thereof, when combined with the rate of all other sales and use taxes, exclusive of state sales and use taxes, levied and collected within any local governmental subdivision, shall not exceed three percent (emphasis added).

Art. VII, § 3. Collection of Taxes
(B)(1) Notwithstanding any contrary provision of this constitution, sales and use taxes levied by political subdivisions shall be collected by a single collector for each parish. On or before July 1, 1992, all political subdivisions within each parish which levy a sales and use tax shall agree between and among themselves to provide for the collection of such taxes by a single collector or a central collection commission. The legislature, by general law, shall provide for the collection of sales and use taxes, levied by political subdivisions, by a central collection commission in those parishes where a single collector or a central collection commission has not been established by July 1, 1992.
(2) The legislature, by local law enacted by two thirds of the elected members of each house of the legislature, may establish an alternate method of providing for a single collector or a central collection commission in each parish.

(3) Except when authorized by the unanimous agreement of all political subdivisions levying a sales and use tax within a parish, only those political subdivisions levying a sales and use tax shall be authorized to act as the single collector or participate on any commission established for the collection of such taxes (emphasis added).
....
It is undisputed that the power of taxation resides in the state legislature, except as otherwise provided in the constitution. La. Const. art. VII, § 1. Local governments possess with respect to taxation only those powers granted to them by the state constitution or statutes. Radiofone, Inc. v. City of New Orleans, 93-0962 (La.1/14/94), 630 So.2d 694. It is similarly well settled that statutes are presumed constitutional unless fundamental rights, privileges and immunities are involved. This presumption is especially forceful in the case of statutes enacted to promote a public purpose, such as statutes relating to taxation and public finance. Unlike the federal constitution, our state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through the legislature. Chamberlain v. State Through Dep't. of Transp. and Dev., 624 So.2d 874 (La.1993).
The burden of proving that an act of the legislature is unconstitutional is on the party attacking the act. Moore v. Roemer, 567 So.2d 75 (La.1990). A party seeking a declaration of unconstitutionality must point to a particular provision which would prohibit the legislature from enacting such a statute. It must be shown clearly and convincingly that it was the constitutional aim to deny the legislature the power to enact the statute in question. Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of State of La., 529 So.2d 384 (La.1988). However, a constitutional *780 limitation on legislative power may be either express or implied. Board of Comm'rs of North Lafourche Conservation, Levee and Drainage Dist. v. Board of Comm'rs of Atchafalaya Basin Levee Dist., 95-1353 (La.1/16/96), 666 So.2d 636. When a constitutional challenge is made, the question is whether the constitution limits the legislature, either expressly or impliedly, from enacting the statute at issue. Chamberlain, 624 So.2d at 879; Tanner v. Beverly Country Club, 217 La. 1043, 47 So.2d 905 (1950). The constitution is the supreme law, to which all legislative acts and all ordinances, rules, and regulations of creatures of the legislature must yield. Macon v. Costa, 437 So.2d 806 (La.1983). The state cannot effect a de facto nullification of a constitutional provision that it is powerless to repeal save by constitutional amendment. Williams v. State, Through Office of Motor Vehicles, 538 So.2d 193 (La. 1989). When a statute conflicts with a constitutional provision, the statute must fall. City of Baton Rouge v. Short, 345 So.2d 37 (La.1977).
The issue before us is whether the constitutional grant of authority to local governments to levy and collect local sales taxes prohibits the legislature from requiring local governments to agree that local taxes on motor vehicles will be collected by OMV. The resolution of this issue turns on our interpretation of what necessarily falls within the ambit of the constitution's specific delegation to local governments of the right to levy and collect sales and use taxes.
In seeking to discover constitutional intent, we are guided by many of the same rules followed in interpreting laws and written instruments. Succession of Lauga, 624 So.2d 1156 (La.1993). When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be interpreted as written without further interpretation in search of its intent. When a provision is susceptible of different meanings, it is interpreted by examining the context and the text in which it occurs as a whole and by giving it the meaning that best conforms to its purpose. Provisions on the same subject matter are interpreted with reference to each other. We have held that the function of the court in construing constitutional provisions is to ascertain and give effect to the intent of the people who adopted it. It is the understanding that can reasonably be ascribed to the voting population as a whole that controls. Radiofone, Inc. v. City of New Orleans, 630 So.2d 694 (La.1994). With these principles in mind, we turn to the question of whether the statute in question impermissibly infringes on the power to "collect" local sales and use taxes specifically delegated to local government in the constitution.
In order to ascertain the ordinary, usual, and commonly understood meaning of a word not otherwise defined in a constitution, courts generally look first to the dictionary definition. 16 Am.Jur.2d Constitutional Law § 71 (1998). The most common dictionary definition of the term "collect" is "the act of gathering in." See, e.g., Oxford English Dictionary (2d ed. 1989); Webster New Collegiate Dictionary (1977). When used with reference to the collection of money, the power to "collect" implies more than the mere act of "receiving" the money. See Intermountain Health Care, Inc. v. Board of Comm'rs of Blaine County, 109 Idaho 299, 707 P.2d 410 (1985); Board of Comm'rs of Okfuskee County v. Hazlewood, 79 Okla. 185, 192 P. 217 (1920). Tax collection is a governmental function and is one of the distinct processes by which the power of taxation is exercised. 84 C.J.S. Taxation § 640 (1954).
In our view, the layman's understanding of the power to "collect" would necessarily carry with it the power to designate whomever the local collector sees fit to assist in the act of gathering in the taxes owed. A statutory mandate that the local collector must agree to allow someone else to gather in the local taxes infringes on the intrinsic authority of the local collector conferred by the constitution. By expressly granting the power to collect local taxes to local government, the constitution implicitly prohibits the legislature from appointing a state agency to collect local taxes absent consent of the local tax collector.
*781 OMV's insistence that it is only an "agent" for the local collector does not resolve the issue. It is the function being performed that controls, not the label put upon it. Even if we were to agree that OMV is merely an "agent" of the local collector, so as not to violate the rule that there can be but one "collector" for each parish (La. Const. art. VII, § 3), we would still conclude that the statute runs afoul of the constitution. Agency is a relationship whereby a principal voluntary designates another to carry out his business. La. Civ.Code art. 2989. In this case, the Commission has not voluntarily agreed to accept OMV as its agent. It does not want OMV for its agent, preferring to carry out the tax collection process itself. OMV concedes that the statute at issue is the only instance in which the state has attempted to designate a mandatory tax collection agent for a local tax collector constitutionally empowered to collect local taxes. While local tax collectors often voluntarily designate local dealers and merchants as agents to assist in the collection of local taxes by ordinance, that designation is made by choice of the local government.[2]
OMV argues that the legislature can impose the agency relationship on the parish against its will because the constitution does not expressly prohibit the legislature's appointment of a mandatory agent. We disagree. As previously noted, a constitutional limitation on the power of the legislature can be either express or implied. For instance, in Williams v. State, supra, we held that the express power to levy a $3.00 annual license tax on motor vehicles impliedly prohibited the imposition of another charge, however denominated. 538 So.2d at 197. We concluded that any other interpretation of the constitution would render nugatory the express grant of authority. We reach a similar conclusion in this case. First, the concept of a third party imposing an agency relationship on a principal contradicts the very nature of the agency relationship. Second, while the constitution does not expressly prohibit what is sought to be accomplished here, in our view, the delegation of power to collect local taxes to local government implicitly prohibits the kind of interference the statute in this case imposes.
A review of La. R.S. 47:303 reveals that in addition to insisting that the parish accept an agency against its will, the state imposes a fee of 1% for performing the service that the parish does not want it to perform. Moreover, the statute provides that the state legislative auditor will audit the records of local taxes collected at the expense of local government. No procedure is outlined for local governments to protest either the outcome or the expense of the audit. If OMV has erred in its calculation of the local taxes due to a particular parish, it is to make up the difference on the next occasion funds are sent to the parish. However, there is no provision for local government to recoup the interest that would otherwise have been earned had the funds been timely collected. Nor is there any provision dictating the timeliness with which OMV must remit local taxes to the local tax collector.
While there is no evidence in this record to suggest that OMV's charge for the services it provides is unreasonable at this time, that it has unnecessarily delayed the remission of taxes to the parishes, or that it will insist upon collecting other types of local taxes in the future, if we acknowledge legislative power to impress tax collection services upon the parishes in the case of motor vehicle sales taxes, we will be acknowledging a legislative prerogative to insist upon the collection of all local taxes by state agencies. In Board of Directors of La. Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of State of La., 529 So.2d 384 (La.1988), we recognized that one of the objectives of Article VI of the 1974 constitution was to make *782 parishes and municipalities more than mere creatures of the legislature through grants of self-operative powers. The delegates hoped to grant a greater degree of self-government and independence from the legislature to municipalities and parishes. 529 So.2d at 388 (citing XVIII Records of the Louisiana Constitutional Convention of 1973: Verbatim Transcripts, Sept. 29, 1973, at 22 [hereinafter cited as Records]; XVI Records, Sept. 20, 1973, at 41, 44-45, 47; Kean, Local Government and Home Rule, 21 Loy.L.Rev. 63 (1975)).
The Louisiana Constitution of 1921 did not provide an express grant of authority to local government to levy and collect sales and use taxes. Local governments had to depend on the legislature to delegate such powers by statute. The 1974 constitution elevated the sales and use tax levy and collection powers of local government to constitutional dignity. Sales and use taxes are an extremely important source of revenue for the funding of local governments. The legislature cannot effectively abrogate the power to collect by designating a mandatory agent to gather in local taxes and thereby reduce the local collector to a mere recipient of funds. The constitution grants the power to collect, not merely the right to receive. While the legislature may have certain residual powers to affect the method of collection of local taxes, it cannot indirectly assume a local tax collection function without the acquiescence of the local tax collector. By doing so it strikes at the very essence of the tax collection powers granted to local government.[3]
We are reinforced in our conclusion by La. Const. art. VII, § 3, which must be read in pari materia with Article VI of the constitution. In 1991, the people voted to amend the constitution to add § 3(B)(1)-(5). The legislative history of the proposal to the electorate shows that local businesses were being compelled to send local sales taxes levied by local political subdivisions to numerous local tax collectors, resulting in an undue administrative burden on small businesses. Testimony before the Senate Committee on Revenue and Fiscal Affairs demonstrated that local sales taxes were imposed by more than 400 local taxing jurisdictions and that there were more than 190 separate local sales tax collectors throughout the state.[4] In order to ease the burden on businesses, the legislature proposed to the electorate a constitutional amendment providing that there be only one collector of local sales and use taxes within each parish.
An examination of the amendment, adopted by the electorate in 1991, shows that great attention was paid to the convergence of the collection power in a central collector for each parish. The constitutional amendment provided in great detail for the manner of selection of the single local collector. Except in the case of unanimous agreement, only local taxing authorities can serve as the official collector or serve on a central collection commission. While the history of the proposed constitutional amendment makes it clear that its primary purpose was the centralization of local tax collection within each parish, it is equally clear that the amendment envisions local control over the collection of local taxes. The amendment provides that local taxes "shall be collected" by a single local collector "for each parish." It is noteworthy that the legislature deemed it necessary to pass a constitutional amendment to centralize the local collection function in a single parish collector or commission because the power of collection was given to each political subdivision in the constitution.[5] A statute was considered insufficient to accomplish the consolidation of constitutionally conferred local tax collection powers. We similarly conclude *783 that a statute appointing a mandatory agent cannot deprive local government of the right to exercise constitutionally conferred sales tax collection powers.
Accordingly, we hold that the disputed portions of La. R.S. 47:303(B)(3)(a) and (b)(i) are unconstitutional because they impermissibly infringe on the sales and use tax collection powers conferred on local governments by the constitution.

DECREE
For the foregoing reasons we affirm the ruling of the trial court.
NOTES
[*] Calogero, J. not on panel. Rule IV, Part 2, § 3.
[1] La. R.S. 47:303 was amended by Act 467 of 1995 to add the provisions in dispute which make the OMV a mandatory agent of local tax collectors. Prior to amendment, the statute provided that the local parishes were authorized to contract with OMV for the collection of local motor vehicle taxes. In 1989, the Shreveport-Caddo Parish Tax Commission revoked its contract with OMV and sought to collect local motor vehicle sales and use taxes directly. The Louisiana Automobile Dealers Association filed suit to enjoin local collection of the taxes, arguing that La. R.S. 47:303 required the Commission to allow OMV to collect the local taxes. The First Circuit Court of Appeal dissolved a permanent injunction granted by the trial judge, interpreting the statute to permit rather than require local tax collectors to use OMV as an agent for the collection of local taxes. The court opined that any interpretation of the statute that would force local tax collectors to use OMV as an agent would be an unconstitutional infringement on the sales tax collection powers granted to local government in La. Const. art. VI, § 29. Louisiana Auto. Dealers Ass'n. v. Politz, 95-0432 (La. App. 1st Cir. 11/9/95); 664 So.2d 1251. While the matter was pending on appeal, the current version of the statute was passed which requires local tax collectors to use OMV as an agent for the collection of local motor vehicle taxes.
[2] Caddo Parish provides by ordinance for the appointment of local dealers as agents of the local tax collector. It requires dealers to initially collect local sales and use taxes from the purchasers or consumers and remit the local taxes directly to the local tax collector. The ordinance further requires that each dealer file a report and remit the taxes on a monthly basis. If taxes are not paid on time, they become immediately delinquent and the Commission can obtain an order that the dealer cease and desist from doing business and may pursue the dealer for the delinquent taxes, in addition to interest, penalties and attorney's fees. Parish Ordinance No. 2593 of 1989, § 13-104.01 and § 13-109.24.
[3] OMV suggests that our decision in BP Oil Co. v. Plaquemines Parish Gov't, 93-1109 (La.9/6/94), 651 So.2d 1322 dictates a different result. We do not agree. BP did not address local tax collection powers. It dealt with the legislature's right to fix a valuation method for property subject to local use taxes as part of its power to define use taxes, a right which is also conferred in La. Const. art. VI, § 29. By its power to define a use tax and the valuation methods used in connection therewith, the legislature prevents local governments from exceeding the constitutionally imposed 3% ceiling on local sales and use taxes.
[4] See Minutes of the Senate Committee on Revenue and Fiscal Affairs, May 27, 1991.
[5] See Minutes of House Committee on Civil Law and Procedure, May 14, 1991.